Matilda ST. CLAIR, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 5–91 CV 138.

United States District Court,
D. Minnesota,
Third Division.

May 3, 1993.

Patrick James Roche, Trenti Law Office, Virginia, MN, for plaintiff.

Robert Michael Small, U.S. Atty. Office, Minneapolis, MN, Thomas v. Linguanti, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## ORDER

ALSOP, Senior District Judge.

This matter comes before the Court on defendant United States of America's Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56. In accordance with Federal Rule of Civil Procedure 78, the Court deems a hearing on the motion is not necessary and issues this Order based upon the materials submitted.

Defendant seeks partial summary judgment on plaintiff Matilda St. Clair's action to obtain a refund of delinquency penalties assessed against the estate of Charles S. Elliot (the "Estate") for failure to timely file its estate tax return and timely pay its estate taxes.

## I. FACTUAL BACKGROUND

Charles S. Elliot (the "decedent") died August 5, 1986, leaving his estate to plaintiff Matilda St. Clair. Initially, Inez Davis was appointed personal representative of the estate and Fabian Danich acted as Davis' attorney. However, in March or April of 1987, plaintiff contacted Vernon Saxhaug, a real estate and probate attorney, to replace both Davis and Danich and represent her interests in the estate.

After speaking with plaintiff, Saxhaug contacted Davis and Danich and initiated the process to assume Davis' position as personal representative and Danich's position as attorney for the estate. Davis and Danich advised Saxhaug that the estate's gross taxable value was approximately $300,000.00 to $400,000.00. Therefore, at the time of Saxhaug's formal appointment as personal representative, Saxhaug believed that it was unnecessary to file a federal estate tax return.[1] Saxhaug replaced Danich as the attorney on

---

1. Internal Revenue Code § 6075(a) required the filing of a federal estate tax return for decedents dying in 1986 when their gross estates exceeded $500,000.00.

April 15, 1987, and was formally appointed the successor personal representative on June 3, 1987.

It was not until after Saxhaug was formally appointed personal representative that he became aware of the necessity to file a estate tax return. On June 4, 1987, Saxhaug searched decedent's home and discovered a large number of stock certificates that Davis and Danich did not account for. Therefore, on approximately June 4, 1987, Saxhaug was aware that the estate exceeded $500,000.00 and that the filing of a estate tax return was required. Additionally, on or about June 9, 1987, Saxhaug received dividend checks which also established further stock holdings.

On August 17, 1987, the estate filed decedent's final 1986 personal individual income tax return (the "decedent's 1040"). This return included dividend income from the same stock certificates that Saxhaug later included in the estate tax return. A comparison of the stocks indicates that fourteen of the eighteen stocks included in the estate tax return were also included in decedent's 1040.

Although the statutory filing and payment deadline for the estate tax return was May 5, 1987, Saxhaug did not file and pay the estate taxes until October 21, 1988. Consequently, the estate was assessed a penalty of $100,-722.00. Of this total liability, $71,944.00 was a penalty for late filing, and $28,779.00 was a penalty for late payment.

After paying the assessed penalties, plaintiff filed a claim for a refund with the Internal Revenue Service (the "IRS"). The IRS denied plaintiff's claim, and plaintiff filed the present Complaint. Plaintiff seeks a refund of the assessed penalties, claiming that the estate had reasonable cause for filing and paying the estate's taxes late. Defendant moves for partial summary judgment with respect to $95,925.00 of the $100,722.00 assessed against the estate, claiming this amount is the portion of the penalties for which the estate as a matter of law acted untimely and without reasonable cause.

## II. *Standard of Review*

The Supreme Court has held that summary judgment is to be used as a tool to isolate and dispose of claims or defenses that are either factually unsupported or are based on undisputed facts. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Hegg v. United States,* 817 F.2d 1328, 1331 (8th Cir. 1987). Summary judgment is proper, however, only if examination of the evidence in a light most favorable to the non-moving party reveals no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The test for whether there is a genuine issue over a material fact is two-fold. First, the materiality of a fact is determined from the substantive law governing the claim. Only disputes over facts that might affect the outcome of the suit are relevant on summary judgment. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512; *Lomar Wholesale Grocery, Inc. v. Dieter's Gourmet Foods, Inc.,* 824 F.2d 582, 585 (8th Cir.1987), *cert. denied,* 484 U.S. 1010, 108 S.Ct. 707, 98 L.Ed.2d 658 (1988). Second, any dispute over material fact must be "genuine." A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Liberty Lobby,* 477 U.S. at 252, 106 S.Ct. at 2512. It is the non-moving party's burden to demonstrate that there is evidence to support each essential element of his claim. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. In this case the material facts are undisputed.

## III. *Discussion*

Defendant argues that the estate did not have reasonable cause for failing to file the estate tax return and pay the estate taxes after August 17, 1987. Defendant selects August 17, 1987, because it allots sufficient time after Saxhaug's discovery of the stock to prepare the estate tax return. In support of this argument, defendant notes that on August 17, 1987, Saxhaug was able to file the decedent's 1040, which included fourteen of the estate's eighteen stocks. In response, plaintiff argues that the estate had reasonable cause for delaying the filing of the tax return and payment of the taxes until March

1, 1988. Plaintiff contends that before March 1, 1988, valuation and verification of the decedent's stocks was impossible. Therefore, plaintiff argues that the Court should revise the penalty using March 1, 1988 as the determining date.

■ The laws governing the filing of estate tax returns and the payment of estate taxes are relatively straight forward. Internal Revenue Code section 6075(a) requires the estate to file a tax return and pay estate taxes no later than nine months after the date of the decedent's death. Internal Revenue Code section 6651 mandates penalties for not complying with section 6075(a). Under section 6651(a)(1), the estate is assessed a 5 percent penalty for each month that a estate tax return is late, up to a maximum penalty of 25 percent. Likewise, section 6651(a)(2) assesses the estate a 5 percent penalty for each month that the estate fails to pay its estate taxes. Section 6651(c)(1) limits the penalties assessed to the estate. When both penalties are assessed, the maximum penalty for each month may only be an aggregate of 5 percent.

An estate can avoid these penalties if it demonstrates that its failure to comply with section 6075 was due to reasonable cause and not due to willful neglect. 26 C.F.R. § 301.6651–1(c) (1990). In determining reasonable cause, the court is to look to see if the estate exercised ordinary business care and prudence but was still unable to timely file and pay its taxes. *Richter v. United States,* 440 F.Supp. 921, 923 (D.Minn.1977).

■ The estate has a duty to file a return based on the best information available. *Estate of Wilbanks v. CIR,* 61 T.C.M. (CCH) 1779, 1781–1782, 1991 WL 11522 (1991). There is no duty to file a return reflecting perfect information of the estate's assets because an estate can subsequently amend the return to reflect new information. 26 C.F.R. § 20.6081–1(c). Therefore, problems with assembling or valuing the estate's assets do not constitute reasonable cause for purposes

of avoiding the penalties under section 6651. *Estate of Moran,* 46 A.F.T.R.2d, 80–6138, 80–6139 (1980); *Estate of Wilbanks,* 61 T.C.M. (CCH) at 1781–1782.

In the present case, the parties dispute the relevant date for determining the penalties under section 6651.[2] Therefore, the issue before the Court is whether the estate had reasonable cause to delay filing and paying the estate taxes after August 17, 1987.

■ Approximately June 4, 1987, after being formally appointed personal representative, Saxhaug discovered decedent's stock certificates which made him aware that the filing of a estate tax return was necessary. Although Saxhaug was aware on June 4, 1987, that the filing of a estate tax return was necessary, he waited until October 21, 1988 to file and pay the estate taxes. Notwithstanding Saxhaug's delay in the filing and payment of the estate taxes, he was able to file the decedent's 1040 on August 17, 1987.

It was unreasonable to delay filing the estate tax return and paying the estate taxes any later than August 17, 1987. During the period between the discovery of the stock and August 17, 1987, it was feasible for the estate to value and verify fourteen of the decedent's eighteen stocks specified on the estate tax return. The estate had knowledge of the estate's fourteen stocks because Saxhaug listed them as producing dividend income on the decedent's 1040 filed on August 17, 1987.[3] Valuation and verification of these stocks was possible by consulting newspapers, agents of the companies, and business publications. Even if this process did not accurately reflect the estate's true worth, the law does not require the filing of a perfect tax return. Additionally, the inability of Saxhaug to assemble all of the estate's assets did not constitute reasonable cause for failing to file the estate tax return and pay the estate taxes. The law allows an estate to supplement its original tax return with information later discovered.

---

2. The government concedes for purposes of this motion that the actual due date of May 5, 1987, should not be the date in which section 6651 penalties are calculated.

3. The value of these fourteen stocks was approximately $1,400,000.00, while the value of the additional stocks, not included on the decedent's 1040, was approximately $53,000.00.

The Court concludes that penalties should be determined using August 17, 1987. After August 17, 1987, the estate did not have reasonable cause for failing to file its tax returns and pay the estate taxes. The penalties assessed to the estate are calculated using August 17, 1987, as the deadline for filing and paying the estate taxes and October 21, 1988, as the date of the estate's actual filing and payment of the taxes. Applying section 6651, the penalty for failing to timely file and pay the estate taxes is $95,925.00.

Accordingly, upon review of all the files and records herein,

**IT IS HEREBY ORDERED** That:

1. Defendant's Motion for Partial Summary Judgment against plaintiff's claim to recover overpayments made to defendant is GRANTED and plaintiff's claim for recovery of overpayments is DISMISSED with respect to $95,925.00 of the $100,722.00 originally assessed against plaintiff.